**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

**KENDRA HARPER**, *individually and on behalf of all others similarly situated,*

*Plaintiff,*

v.

**NBI, INC.**

*Defendant.*

**ORAL ARGUMENT REQUESTED**

Case No. 24-CV-00644

**DEFENDANT NBI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street
Suite 3700
Chicago, Illinois 60603-3433
Tel: (312) 499-6700
Fax: (312) 499-6701
Email: gmaatman@duanemorris.com
Email: jariley@duanemorris.com
Email: rgarippo@duanemorris.com

***Attorneys for Defendant***

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. THIS COURT SHOULD DISMISS HARPER'S CLAIM BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE THAT NBI IS IN THE BUSINESS OF PRERECORDED VIDEO TAPE RENTALS, SALES, OR DELIVERIES .......... 5

A. The Seventh Circuit Requires Arms Dealers To Sell Firearms For Livelihood Or Profit .......... 6

B. Securities Dealers Are Only Such If They Seek To Generate Profit And The Conduct Is That Of A Commercial Enterprise .......... 7

C. Social Clubs And Other Nonprofits Are Not Engaged In Business Either .......... 8

D. Courts Require An Alleged Video Tape Service Provider's Purpose To Be Significantly Tailored To The Monetization Of Prerecorded Videos .......... 9

E. This Authority Demonstrates That Nonprofits Are Not Subject To The VPPA's Reach .......... 11

II. LIVE VIDEO SALES ARE NOT COMPENSABLE UNDER THE VPPA BECAUSE SUCH ENTITIES ARE NOT ACTING AS VIDEO TAPE SERVICE PROVIDERS WHEN THEY MAKE SUCH SALES .......... 13

III. CLE COURSES ARE NOT OTHER "SIMILAR AUDIO VISUAL MATERIALS" AND, THEREFORE, NBI IS NOT A VIDEO TAPE SERVICE PROVIDER .......... 15

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Federal Cases**


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Cantu v. Tapestry, Inc.*, No. 22-CV-1974, 2023 WL 4440662, at *7 (S.D. Cal. July 10, 2023) .......... 9-11, 14

*Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327 .......... 4

*Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012) .......... 4, 14

*Louth v. NFL Enters. LLC*, No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) .......... 13, 16

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023) .......... 14

*Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544 (D.N.J. May 22, 2024) .......... 13

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) .......... 4

*Pickett v. Sheridan Health Care Ctr.*, 664 F. 3d 632 (7th Cir. 2011) .......... 2

*SEC v. Carebourn Cap., L.P.*, No. 21-CV-2114, 2023 WL 6296032 (D. Minn. Sept. 27, 2023) .......... 7-8, 11

*SEC v. Long*, No. 23-CV-14260, 2024 WL 3161669 (N.D. Ill. June 25, 2024) .......... 7

*Sestric v. Clark*, 765 F.2d 655 (7th Cir. 1985) .......... 16

*Sobitan v. Glud*, 589 F.3d 379 (7th Cir. 2009) .......... 5

*Solomon v. Flipps Media, Inc.*, No. 22-CV-5508, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) .......... 13

*Stark v. Patreon, Inc.*, 653 F. Supp.3d 841 (N.D. Cal. 2022) .......... 13

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) .......... 15

*United States v. Gross*, 451 F.2d 1355 (7th Cir. 1971) .......... 6-7, 11

*Walker v. Meta Platforms, Inc.*, No. 22-CV-02442, 2023 WL 3607282 (N.D. Cal. Mar. 3, 2023) .......... 13

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) ....................15, 18

**State Cases**

*All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186 (2010) .......... 8

*Matter of Becker*, 620 N.E.2d 691 (Ind. 1993) .......... 18

*City of Coos Bay v. Aerie No. 538 of Fraternal Ord. Eagles*, 170 P.2d 389 (Or. 1946) .......... 8

*Matter of Hughes*, 640 N.E. 2d 1065 (Ind. 1994) .......... 18

*Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904 (Ill. 1942) .......... *Passim*

**Federal Statutes**

18 U.S.C. § 921 .......... 6-7

18 U.S.C. § 2710 .......... *Passim*

28 U.S.C. § 501(c)(3) .......... *Passim*

**Federal Rules**

Fed. R. Civ. P. 12 .......... 5

Fed. R. Evid. 201 .......... 2

**State Rules**

Ind. St. Admins. & Disc. R. 29 .......... 16-17

Ind. R. Prof'l. Cond. 3.3 .......... 15

**Law Review Articles**

*Chapter Three The Video Privacy Protection Act As A Model Intellectual Privacy Statute*, 131 Harv. L. Rev. 1766, 1766 (2018) .......... 17-18

**Governmental Websites**

Ind. Judicial Branch, CLE Course Sponsor (last accessed October 22, 2024), https://courtapps.in.gov/Reports/api/SponsorReport .......... 3

Ind. Sup. Ct., Sponsor Application of Accreditation of CLE Course (last accessed October 22, 2024), https://www.in.gov/courts/ace/files/sponsor-cle-application.pdf ........................ 18

IRS, NBI, Inc. Tax Year 2022 Form 990 (last accessed October 22, 2024) https://apps.irs.gov/pub/epostcard/cor/391768861_202212_990_2024010422172449.pdf ........................................................................................................ 2

U.S. Dist. Ct. S.D. Ind., Kendra Yvette Harper (last accessed October 22, 2024), https://ecf.insd.uscourts.gov/cgi-bin/BarLookup.pl ...................................... 2

Defendant NBI, Inc. ("NBI" or "Defendant"), by and through its attorneys, Duane Morris LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Kendra Harper's ("Harper" or "Plaintiff") Complaint for Failure to State a Claim.

## INTRODUCTION

Harper's Video Privacy Protection Act ("VPPA") claim is deficient on its face. Harper fails to plead elements of her claim and advances positions that are contrary to well-established law. As a result, no amendment can save her claim, and the Court should dismiss the Complaint with prejudice.

*First*, the Court should dismiss Harper's claim for violation of the VPPA because she has not and cannot allege that NBI is a "video tape service provider" within the meaning of the statute. By the statute's plain language, it proscribes only the conduct of entities engaged in "business." As Plaintiff must concede, NBI is a nonprofit and, therefore, does not engage in "business" within the meaning of the VPPA. Accordingly, Harper's claim cannot succeed.

*Second*, the Court should dismiss Harper's claim because she fails to plausibly allege that she viewed "prerecorded" content sufficient to invoke the protection of the VPPA. Courts regularly dismiss VPPA claims where plaintiffs fail to plead such necessary details. Although NBI's website offers a "wide variety" of content, Harper does not allege what type of content she viewed and cannot allege that she watched exclusively prerecorded videos.

*Third*, the Court should dismiss Harper's claim because continuing legal education courses are not the "prerecorded video cassette tapes or similar audio visual materials" that Congress intended to regulate when it passed the statute. Because Congress codified the term "similar" in the types of materials that were covered by the VPPA, any claims predicated on dissimilar materials should be disregarded as a matter of law.

As a result, and as further discussed herein, the Court should dismiss the Complaint with prejudice because Harper has not and cannot plead the elements of the claim she asserts.

**<u>BACKGROUND</u>**

This case involves Harper's claim that Defendant allegedly disclosed the titles of continuing legal education ("CLE") courses she viewed along with her personally identifiable information. Harper lives in "Marion County, Indiana" (ECF No. 1 ¶ 7) and is an attorney. *See, e.g.,* U.S. Dist. Ct. S.D. Ind., Kendra Yvette Harper (last accessed October 22, 2024), https://ecf.insd.uscourts.gov/cgi-bin/BarLookup.pl (a search for "Kendra Harper" evidences her admission to the U.S. District Court for the Southern District of Indiana).[1] Harper brings suit against NBI, a 501(c)(3) nonprofit[2] certified CLE

---

[1] This Court may take judicial notice of the information contained on the Southern District of Indiana's website because it is a government website. *See* Fed. R. Evid. 201; *see also Pickett v. Sheridan Health Care Ctr.*, 664 F. 3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government website.").

[2] NBI's filings with the IRS substantiate that it is a 501(c)(3) entity that "provide[s] educational assistance and services to improve education." *See* Internal Revenue Services, NBI, Inc. Tax Year 2022 Form 990 (last accessed Oct. 22, 2024) https://apps.irs.gov/pub/epostcard/cor/391768861_202212_990_2024010422172449.pdf.

course provider, which is sponsored by the State of Indiana, stemming from NBI's alleged used of Meta, Inc.'s (formerly known as Facebook) business tool called Meta Pixel. *See, e.g.* Ind. Judicial Branch, Continuing Legal Education Course Sponsor (last accessed October 22, 2024), https://courtapps.in.gov/Reports/api/SponsorReport.

Harper alleges that, in June 2023 and June 2024, she purchased videos from "nbi-sems.com" (*i.e.*, Defendant's website). (ECF No. 1 ¶ 9.) She states that she created an account on NBI's website and provided her name, email address, payment information, and zip code. (*Id.*) Notably, Harper does not assert any facts regarding the type of content she allegedly viewed but makes the vague assertion that she "used her account on Defendant's website to request and obtain pre-recorded videos from Defendant." (*Id.* ¶ 10.)

As noted above, the crux of Harper's claim stems from her allegation that NBI also installed Meta Pixel on its website which is allegedly a "unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta." (*Id.* ¶ 44.) This software allows Meta to "use the collected information to service highly targeted advertising to them." (*Id.* ¶ 45.) In so doing, Harper alleges that Meta Pixel transmits the "FIDs [*i.e.*, Facebook ID] of its customers, the specific titles of video products that each of them requested, and the purchase of a subscription." (*Id.* ¶ 51.) She further alleges that she "has never consented, agreed, authorized, or otherwise permitted Defendant to disclose her Personal Viewing Information to Meta." (*Id.* ¶ 12.)

Based on these allegations, on September 11, 2024, Harper filed this putative class action lawsuit alleging that NBI "knowingly disclos[ed] Plaintiff's and its other customers' identities, their subscription purchases, and the titles of the prerecorded video materials that they obtained to Meta Platforms, Inc." (*Id.* ¶ 1.) She alleges that this conduct violates the VPPA, 18 U.S.C. § 2710. (ECF No. 1 ¶¶ 64–74.) NBI now moves to dismiss that claim because Harper fails to state a claim upon which relief can be granted.

## LEGAL STANDARD

A plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 540 (2007)). "But allegations in the form of legal conclusions are insufficient. As are threadbare recitals of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015 (quotations omitted). In order to determine whether dismissal is proper, a district court may rely on "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Further, to state a claim under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *See, e.g., Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quotations omitted). The

failure to plead even one of these elements should result in the dismissal of a VPPA claim pursuant to Fed. R. Civ. P. 12(b)(6). *Id.*

## ARGUMENT

### I. THIS COURT SHOULD DISMISS HARPER'S CLAIM BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE THAT NBI IS IN THE BUSINESS OF PRERECORDED VIDEO TAPE RENTALS, SALES, OR DELIVERIES

Plaintiff cannot plead that NBI is a "video tape service provider" within the meaning of the VPPA. 18 U.S.C. § 2710(a)(4). Because nonprofits (such as NBI) are not engaged in *business*, they do not meet the statutory definition. Therefore, Plaintiff cannot plead the first element of her VPPA claim.

The term "video tape service provider" refers to any person "engaged in the *business* . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* (emphasis added). The text of the statute does not define the phrase "engaged in the business" or even the term "business." *See generally id*. Because the term is "undefined," this Court is instructed to rely on the "traditional cannons of statutory interpretation and look to the plain meaning of the word" in order to ascertain its meaning. *Sobitan v. Glud*, 589 F.3d 379, 387 (7th Cir. 2009) (quotations omitted).

No federal court has analyzed whether a nonprofit, like NBI, can be "engaged in the business" of selling prerecorded video materials as used in the VPPA. The Seventh Circuit and other courts, however, have analyzed the plain meaning of this phrase as used in other statutes and determined that a purpose of livelihood or profit is required. Because Congress used the same terminology here, this Court should find that the same purposes are required for the VPPA

### A. *The Seventh Circuit Requires Arms Dealers To Sell Firearms For Livelihood Or Profit*

The Seventh Circuit has looked at the term "business" as used in a similar statutory structure and determined that the purpose of the enterprise must be that of livelihood or profit. *See, e.g., United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971).

In *Gross*, the court considered a federal statute that defines an arms "dealer" to be "any person *engaged in the business* of selling firearms or ammunition at wholesale or retail." *Id.* (quoting 18 U.S.C. § 921(a)(11) (emphasis added)). There, the criminal defendant sold guns for "a licensed firearms dealer" where "defendant and other salesman sold new and used pistols, shotguns and rifles to the store's customers." *Id.* at 1356. But, "[t]he defendant had no personal license to deal in firearms." *Id.* Acting in his personal capacity, the criminal defendant sold firearms to an undercover police officer and "the prices that the defendant charged the officer were considerably in excess of the market value of those guns." *Id.* at 1356-57. Based on this evidence, the government was able to secure a conviction of the above-mentioned statute at trial.

On appeal, the criminal defendant argued that he was not a "dealer" within the meaning of the statute because he sold the guns in his personal capacity — not for his employer. The Seventh Circuit disagreed because it concluded that defendant had a profit motive. It determined that the term "business" as it is used in the statute refers to "that which occupies, time, attention and labor for the purpose of livelihood or profit." *Id.* The court concluded that the sale of such weapons all within a "reasonable short space of time" where the defendant had increased the price from the "market value of [the]

guns" (*i.e.*, to earn a profit) was sufficient to demonstrate that he was a "dealer" within the meaning of the statute. *Id.* at 1357-58.[3]

Put another way, the Seventh Circuit determined that, to be a dealer, the defendant must engage in business, which includes having a "purpose of livelihood or profit" from the sale of firearms.

### B. *Securities Dealers Are Only Such If They Seek To Generate Profit And The Conduct Is That Of A Commercial Enterprise*

Federal courts have adopted this profit-motive interpretation in other contexts. *See SEC v. Carebourn Cap., L.P.*, No. 21-CV-2114, 2023 WL 6296032, at *9 (D. Minn. Sept. 27, 2023) (interpreting the phrase "engaged in the business of buying and selling securities"); *SEC v. Long*, No. 23-CV-14260, 2024 WL 3161669, at *2 (N.D. Ill. June 25, 2024) (same). For example, in *Carebourn*, the court analyzed whether an entity was a securities "dealer" within the meaning of a federal statute that defined such persons as those "engaged in the business of buying and selling securities." *Id.* (quotations omitted). The court determined that the "centerpiece to the dealer definition is the word 'business,' which is a commercial enterprise carried on *for profit*, a particular occupation or employment habitually engaged in for *livelihood or gain*." *Id.* (emphasis in original). Consequently, the court determined the proper analysis was to "consider the amount of profit generated and the extent to which the conduct involved resembles a commercial enterprise." *Id.* In

[3] Following the *Gross* decision, Congress codified the statute's applicability and required a "business to predominantly earn a profit through the repetitive purchase and resale of firearms." *See* 18 U.S.C. § 921(a)(21)(d).

sum, Congress passes laws regulating only those engaged in "business" and the analysis of their applicability turns on whether the entity in question seeks to generate profits and to conduct itself as a commercial enterprise.

### C. *Social Clubs And Other Nonprofits Are Not Engaged In Business Either*

Consistent with the Seventh Circuit's and other federal courts' interpretations, state courts have found that the phrase "engaged in the business" excludes nonprofits. *Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904, 906 (Ill. 1942); *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1212-13 (2010) (concluding "a nonprofit trade association" was not "engaged in the business of selling or leasing goods" although it was "undisputed that [its] members are in the business of selling goods"); *City of Coos Bay v. Aerie No. 538 of Fraternal Ord. Eagles*, 170 P.2d 389, 399 (Or. 1946) (holding that the term "business" did not "include the right to levy the tax on an enterprise such as the defendant lodge, which is not being conducted for a livelihood or profit.")

For example, in *Svithiod Sing Club v. McKibbin,* the Illinois Supreme Court sought to answer "whether a social club, organized as a nonprofit corporation, which serves food and drink to its members but not to the public is subject to the Illinois retailers' occupation tax." 44 N.E.2d 904, 906 (Ill. 1942). Similar to the VPPA, the retailers' occupation tax applies only to "persons engaged in the business" of selling certain personal property at retail. *Id.* at 907. The State's director argued that by selling "food and drinks to its members," the social club was engaged in the "business" of such sales. *Id.* at 906-07. The case, therefore, hinged on how to interpret "the word 'business,' used in the act." *Id.*

The Illinois Supreme Court held "the word 'business,' as used in the act, is to be construed in the usual or popular meaning of the word, unless, as stated, the text or purpose of the act varies that meaning." *Id.* And under that plain meaning, the court held that nonprofit organizations do not qualify. *Id.* at 910. The court reasoned that it is clear that:

> the operation of certain equipment, such as a gymnasium or golf course, for the use of which a charge is made to the members, and to whom its use is restricted, does not change the primary object or purpose of the club from a nonprofit corporation whose object is the promotion of social intercourse and the advancement of social arts and sciences, to a business corporation engaged in commercial transactions.

*Id.* For that reason, the court concluded that it cannot "logically be said that the sale of food and drink to those members of a club who desire it . . . is a transformation or change of the objects of a club, not for profit, to the business of selling tangible personal property at retail." *Id.* Because the social club's "charters do not permit them to enter into and transact business for profit," it was not a "business" within the meaning of the statute.

As *Svithiod Sing Club* shows, courts look to the purpose of an entity (there a nonprofit) and ask whether the object of the organization is to generate profit. If an entity is organized for the advancement of the arts and sciences, it is not organized for "business" within the meaning of the statute.

### D. *Courts Require An Alleged Video Tape Service Provider's Purpose To Be Significantly Tailored To The Monetization Of Prerecorded Videos*

The profit-motive interpretation is consistent with the leading district court opinion in *Cantu v. Tapestry, Inc.* which analyzed this language within the context of the VPPA. No. 22-CV-1974, 2023 WL 4440662, at *7 (S.D. Cal. July 10, 2023).

In *Cantu*, a plaintiff brought a similar class action lawsuit based on Coach.com's use of Meta Pixel on its website. *Id.* at *1. There, although Coach.com was a for-profit corporation, the plaintiff claimed that the website "allegedly hosted the 'Dream it Real' video" which was "a webpage promoting the charity works of the Coach Foundation" with Meta Pixel installed on the relevant webpage. *Id.* at *6 (quotations omitted). Coach.com explained that a "business as a luxury fashion retailer cannot fall within the meaning of a 'video tape service provider' as contemplated by the VPPA." *Id.* at *7. In response, the plaintiff argued that Coach.com's "business model involves monetizing instances in which consumers watch videos." *Id.* But, the *Cantu* court dismissed the plaintiff's VPPA claims holding that this allegation was "insufficient."

The *Cantu* court held that [t]he language 'engaged in the business' connotes 'a particular field of endeavor, *i.e.*, a focus of the defendant's work." *Id.* (quotations omitted). And, Coach.com was not "engaged in the business" of selling prerecorded materials. The court held that "[e]ven if it is true that Defendant's business model monetizes the occasions its customers watch videos, Plaintiff has not alleged facts supporting an inference that . . . Coach's enterprise is 'significantly tailored' to achieving such a purpose." *Id.* But even as a for-profit luxury fashion retailer, the hosting of a charity video was insufficient to transform the nature of Coach.com's operations to that of a "video tape service provider." *Id.* The *Cantu* court found that an entity's purpose must be 'significantly tailored' to the monetization of videos to "garner liability under the VPPA." *Id.*

Like the courts in *Gross*, *Carebourn*, and *Svithiod Sing Club,* the *Cantu* court looked to the purpose of the defendant's conduct and then asked whether selling prerecorded videos was "significantly tailored" to that purpose. Although there was no dispute that Coach.com's purpose (as a for-profit entity) was to make a profit, it stands to reason that an entity whose purpose was not to sell prerecorded videos and make money, but rather educate lawyers, would likewise not be covered by the VPPA.

### E. *This Authority Demonstrates That Nonprofits Are Not Subject To The VPPA's Reach*

Taken together, this authority shows that the VPPA requires a profit-motive and that a defendant must operate as a commercial enterprise to be considered a "business" under the statute. Arms sellers violate the law only if they have a primary purpose to make a profit or livelihood. Securities dealers are regulated only if they seek to make a profit and operate as commercial enterprises. And, social clubs pay taxes reserved for businesses only if they have the mission of a business corporation engaged in commercial transactions. The common thread throughout these opinions is the *purpose* of an entity and whether the entity's purpose is consistent with that of a for-profit "business." Congress used that same phrase in the VPPA, showing that its intent is the same.

Here, Harper cannot establish that NBI had a profit motive or an intention to operate as a commercial enterprise consistent with the meaning of the term "business." Similar to the court in *Svithiod Sing Club*, which declined to apply a statute limited to "businesses" to "a nonprofit corporation whose object is the promotion of social intercourse and the advancement of social arts and sciences" because it sold food and

drink, this Court should not apply the VPPA to NBI here. Like the defendant in *Svithiod Sing Club*, NBI's purpose as a 501(c)(3) is not significantly tailored to the monetization of prerecorded videos. To the contrary, NBI's purpose is not to monetize videos, and make money, but rather to provide continuing legal education to practicing lawyers. By definition, a 501(c)(3) entity like NBI is "organized and operated *exclusively* for . . . educational purposes." 28 U.S.C. § 501(c)(3). There is no room in this statutory definition for NBI's operations to be "significantly tailored" to the business of selling prerecorded videos, making a profit, or anything other than educating lawyers. Simply put, by definition, a nonprofit cannot be "significantly tailored" to make a profit.

Moreover, even if Harper asserts that NBI made money or supported the livelihood of its employees from such work, that argument misses the point. The point is that NBI was not organized to provide employees jobs, and it was not organized to make money. Lawyers around the country are required to fulfill their CLE requirements in order to stay in compliance with the rules of their governing jurisdictions. NBI is organized to step in, fill that gap, and exclusively provide services for "educational purposes." 28 U.S.C. § 501(c)(3).

Given this context, it is clear that Harper's claims are without merit because Congress did not intend for nonprofits like NBI to be subject to the VPPA's reach when it limited the statutory definition of "video tape service provider" to those engaged in "business." Harper's claims should be dismissed with prejudice.

## II. LIVE VIDEO SALES ARE NOT COMPENSABLE UNDER THE VPPA BECAUSE SUCH ENTITIES ARE NOT ACTING AS VIDEO TAPE SERVICE PROVIDERS WHEN THEY MAKE SUCH SALES

Even if NBI were a for-profit entity and eligible to be considered a "video tape service provider," Harper still does not sufficiently allege that NBI acted as a "video tape service provider" within the meaning of the VPPA. Plaintiff, therefore, still does not plausibly plead the first element of her claim.

An entity only acts as a "video tape service provider" when it rents, sells, or delivers "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Because "live" content by definition cannot be prerecorded, "[l]ower courts have uniformly declined to interpret 'similar audio visual materials' as covering 'live' content broadcast over the internet." *Walker v. Meta Platforms, Inc.*, No. 22-CV-02442, 2023 WL 3607282, at *5 (N.D. Cal. Mar. 3, 2023) (dismissing claim based on live broadcast materials); *Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *2 (D.N.J. May 22, 2024) (same); *Louth v. NFL Enters. LLC*, No. 21-CV-00405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (same); *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508, 2023 WL 6390055, at *4 (E.D.N.Y. Sept. 30, 2023) (same). For that reason, it is a plaintiff's burden to specify whether the content she viewed was prerecorded or not. *See, e.g., Stark v. Patreon, Inc.*, 653 F. Supp.3d 841, 851 (N.D. Cal. 2022). Accordingly, where a "complaint includes numerous references to 'videos' and 'video content,' but does not specify whether they were broadcast live or prerecorded and available on demand" the claim should be dismissed. *Id.*

Here, Harper alleges that she "purchased videos from Defendant's website in June 2023 and June 2024," but this is insufficient because she fails to allege which of these videos were prerecorded. (ECF No. 1 ¶ 9.) Although NBI's website contains a "wide variety" of materials, Harper's Complaint contains no allegations that would establish which content she viewed that was exclusively prerecorded. (*Id.* ¶ 15.) Harper does not even allege which video content she purchased or viewed on NBI's website.[4] (*See generally id.*) At most, Harper alleges that "when accessing and obtaining the prerecorded video material on Defendant's website," she had a Meta account. (*Id.* ¶ 11.) But, this allegation is wholly insufficient because simply reciting labels like "prerecorded video cassette tapes or similar audio visual materials" is not enough for Harper to carry her burden. *Cantu*, 2023 WL 4440662, at *8. Accordingly, even on the face of the Complaint, this claim should be dismissed.

Even if Harper amends her claim to add more detail regarding the June 2023 and June 2024 purchases, she cannot continue to allege that both videos contain "prerecorded video materials" in good faith. (ECF No. ¶ 1.) Although NBI is not required to take this conclusory allegation as true, it declines to submit evidence to the contrary at this stage in the proceedings. *Geinosky*, 675 F.3d at 745 n.1. If Harper has a good faith basis to continue to assert these allegations, she should do so in more detail in an amended pleading. Otherwise, Harper should remove any allegations that cannot be supported by

---

[4] Failing to plead "the name of the 'specific video materials' on the page" and the nature of such content is an independent basis for dismissal — which Harper fails to do here. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283-85 (S.D.N.Y. 2023).

a reasonable inquiry into the facts before she runs afoul of her duty to correct false statements made to a tribunal. Ind. R. Prof'l. Cond. 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or *fail to correct a false statement* of material fact or law previously made to the tribunal." (emphasis added)). However, in the absence of an amended pleading correcting these defects, Harper's VPPA claim should be dismissed for failure to plead whether each particular video contained live or prerecorded content.

## III. CLE COURSES ARE NOT OTHER "SIMILAR AUDIO VISUAL MATERIALS" AND, THEREFORE, NBI IS NOT A VIDEO TAPE SERVICE PROVIDER

Even assuming *arguendo* that nonprofits can be engaged in "business," and that Harper plausibly alleges that she viewed exclusively prerecorded content, her claim would still fail because CLE courses are not the "prerecorded video cassette tapes or similar audio visual materials" that Congress intended to regulate when it passed the statute. 18 U.S.C. § 2710(a)(4). Consequently, Harper continues to fail to plead that NBI is a "video tape service provider" within the meaning of the VPPA.

The VPPA was "[e]nacted in 1988 in response to the *Washington City Paper's* publication of then-Supreme Court nominee Robert Bork's video rental history (a DC-area video store provided it to a reporter)." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir. 2014). "The profile contained a list of 146 films that Judge Bork and his family had rented from a video store." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016). Concerned with what it deemed an invasion of Judge Bork's privacy, Congress passed the VPPA to prevent similar disclosures. *See id.* But, it did so

against the backdrop that "the states have been held to have a legitimate interest in regulating the quality of the legal practice," and nobody thought that 30 years later federal law would be playing a prominent role in when and how an attorney's CLE courses may be disclosed. *See Sestric v. Clark*, 765 F.2d 655, 663 (7th Cir. 1985). Consequently, to determine what constitutes "similar audio visual materials" within the meaning of the statute, courts look to the Senate Report "recommending passage of the VPPA, specifically identifying 'laser discs, open-reel movies, and CDI technologies'" to ascertain whether Congress intended to regulate such conduct. *See, e.g., Louth*, 2022 WL 4130866, at *4 (quoting S. Rep. No. 100-59, at 5 (1988)).

Based on this background, we know that Congress did not intend for CLE courses to be captured within the meaning of the VPPA for three reasons. First, we know Congress did not think it was regulating compliance protocols for CLE course providers because CLE courses were largely in-person events in 1988. *See* Historical Notes, Ind. St. Admis. & Disc. R. 29, Mandatory Continuing Legal Education. For example, in Indiana, the concept of CLE "Distance Education" (*i.e.*, "instructional delivery that does not constrain the student to be physically present in the law location as the instructor") did not even exist until the 2006 amendment which inserted the relevant subsection. *See id.* (noting "the 2006 amendment, eff. Jan. 1, 2007, inserted Subsec. (n) in Section 2.)" Until 2022, Indiana courts heavily controlled the amount of CLE courses that could be completed remotely. *See id.* (explaining the 2022 amendment). Until quite recently, there was no possibility that these courses would ever be sold in a prerecorded format. Put simply, Congress did not think it was capturing CLE courses in its definition of

prerecorded "audio visual materials," because state courts required such courses to be attended in person in 1988.

This policy objective is evident even from the selective quotations from U.S. Senators that Harper includes in her Complaint. (ECF No. 1 ¶¶ 19-23.) Indeed, Harper concedes that Congress "sought to codify, as a matter of law, that our right to privacy protects the choice of movies that we watch with our family in our own homes." (*Id.* ¶ 21 (quotations omitted).) It is quite a stretch (and certainly not a reasonable inference) to imagine that the 1988 Congress envisioned that Indiana lawyers would one day be watching state-mandated CLE courses with their families for fun. As explained above, at the time, such courses would have been held in person. Nor would the 1988 Congress believe that on-demand CLE courses "offer[s] a window into [their] loves, likes, dislikes." (*Id.*) These courses are professional education courses meant to "establish minimum continuing legal education requirements for each Attorney admitted to the Bar of the State of Indiana. *See* Ind. St. Admin. & Disc. R. 29, Mandatory Continuing Legal Education. CLE courses are not what Congress intended to regulate when it passed the VPPA.

Second, we know Congress did not intend to regulate CLE courses because they are not similar to Judge Robert Bork's personal rental video library. The infamous *Bork Tapes* revealed that Judge Bork "favored Alfred Hitchcock films, spy thrillers, and British costume dramas; [and] someone in the Bork household had an affinity for John Hughes movies." *Chapter Three The Video Privacy Protection Act As A Model Intellectual Privacy Statute*, 131 Harv. L. Rev. 1766, 1766 (2018). In other words, content that was (at best)

only peripherally related to Judge Bork's qualifications to be a Justice on the U.S. Supreme Court. *See id.* However, the irony here is that what CLE materials Judge Bork frequently reviewed and the legal scholarship he engaged with would have certainly been relevant to his confirmation hearings. *See id.* We know this fact to be true because Judge Bork volunteered this information of his own accord and it gave rise to "one of the fiercest battles ever waged over a Supreme Court nominee." *Id.* (quotations omitted). Like Judge Bork, Harper should not take exception with the disclosure of the legal scholarship she engages with. Congress was irate with the disclosure of *personal* video viewership and not *professional* viewership.

Third, we know Congress did not intend to regulate CLE courses because no reasonable person views the content of an attorneys' CLE "repugnant to the right of privacy" today. *Yershov*, 820 F.3d at 485. To the contrary, Indiana courts require attorneys to disclose this information themselves. *See, e.g.*, *Matter of Hughes*, 640 N.E. 2d 1065, 1066 (Ind. 1994) ("Respondent attended an Indiana law update seminar sponsored by the Indiana Continuing Legal Education Forum"); *Matter of Becker*, 620 N.E.2d 691, 694 (Ind. 1993) ("Respondent is ordered to attend the next available seminar in appellate practice offered in Indiana by a certified continuing legal education provider, and upon completion of the same, Respondent shall show proof of attendance"). As it stands, the Indiana Supreme Court even affirmatively requires its CLE providers to disclose "all Indiana attorneys who attended within thirty days following the course." Ind. Sup. Ct., Sponsor Application of Accreditation of CLE Course (last accessed October 22, 2024), https://www.in.gov/courts/ace/files/sponsor-cle-application.pdf. If this information

were so highly sensitive that Congress thought it necessary to adopt $2,500 in statutory damages per violation, then at minimum we would expect the courts in states with such requirements to maintain such privacy on their dockets and in their CLE course provider requirements. But, they do not.

In short, CLE courses were far from Congress' mind when it passed the VPPA — and the extension of the statute to this novel context should be disregarded.

## CONCLUSION

For the forgoing reasons, Defendant NBI, Inc. respectfully submits that this Court should dismiss Plaintiff Kendra Harper's Complaint because it fails to state a claim upon which relief can be granted and also requests any other relief the Court deems proper.

**Dated: October 22, 2024**

Respectfully submitted,

NBI, INC.

By: /s/ *Gerald L. Maatman, Jr.,*
One of its Attorneys

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Tel: (312) 499-6700
Fax: (312) 499-6701
Email: gmaatman@duanemorris.com
Email: jariley@duanemorris.com
Email: rgarippo@duanemorris.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr., do hereby certify that a true and correct copy of the forgoing document has been furnished by the Court's CM/ECF filing system on this 22nd day of October 2024 to the following individuals:

Frank Hedin
HEDIN LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
Email: fhedin@hedinllp.com

**Dated: October 22, 2024**

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499-6700
Email: gmaatman@duanemorris.com

***Counsel for Defendant***