# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **KENDRA HARPER**, *individually and on behalf of all others similarly situated,* | **ORAL ARGUMENT REQUESTED** |
| *Plaintiff,* | Judge William Conley |
| v. | Magistrate Judge Anita Boor |
| **NBI, INC.** | Case No. 24-CV-00644 |
| *Defendant.* | |

## DEFENDANT NBI, INC.'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street
Suite 3700
Chicago, Illinois 60603-3433
Tel:  (312) 499-6700
Fax:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD ......................................................................................... 5

ARGUMENT ...................................................................................................... 5

I.     THIS COURT SHOULD DISMISS HARPER'S CLAIM BECAUSE SHE
FAILS TO PLAUSIBLY ALLEGE THAT NBI IS IN THE BUSINESS OF
PRERECORDED VIDEO TAPE RENTALS, SALES, OR DELIVERIES ................. 6

     A.     The Seventh Circuit Requires Arms Dealers To Sell Firearms For
Livelihood Or Profit ........................................................................ 7

     B.     Securities Dealers Are Only Such If They Seek To Generate Profit
And The Conduct Is That Of A Commercial Enterprise .............................. 8

     C.     Social Clubs And Other Nonprofits Are Not Engaged In Business ............ 9

     D.     Courts Require An Alleged Video Tape Service Provider's Purpose
To Be Significantly Tailored To The Monetization Of Prerecorded
Videos ............................................................................................ 10

     E.     This Authority Demonstrates That Nonprofits Are Not Subject To
The VPPA's Reach ........................................................................... 12

II.    HARPER'S HYPOTHETICAL EXAMPLES BASED ON AN IMAGINARY
USER ARE INSUFFICIENT TO PLAUSIBLY ALLEGE A VIOLATION OF
THE VPPA ........................................................................................ 14

III.   CLE COURSES ARE NOT OTHER "SIMILAR AUDIO VISUAL
MATERIALS" AND, THEREFORE, NBI IS NOT A VIDEO TAPE
SERVICE PROVIDER ........................................................................... 17

CONCLUSION ................................................................................................. 21

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 5

*Cantu v. Tapestry, Inc.*, No. 22-CV-1974, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ...................................................................................................................... 10-12

*Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327 ................................................... 5

*Doe v. Davita Inc.*, No. 23-CV-01424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .................................................................................................................. 15, 17

*Doe v. Amgen*, No. 23-CV-07448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ..................... 15

*Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012) ............................................... 5

*Louth v. NFL Enterprises, LLC*, No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........................................................................................................ 18

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) ........................................ 5, 14

*Nienaber v. Overlake Hosp. Med. Ctr.*, No. 23-CV-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024) .......................................................................... 15, 17

*Pickett v. Sheridan Health Care Ctr.*, 664 F. 3d 632 (7th Cir. 2011) ........................... 3

*Santoro v. Tower Health*, No. 22-CV-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .................................................................................................................... 15

*SEC v. Carebourn Cap., L.P.*, No. 21-CV-2114, 2023 WL 6296032 (D. Minn. Sept. 27, 2023) .............................................................................................. 8-9, 12

*SEC v. Long*, No. 23-CV-14260, 2024 WL 3161669 (N.D. Ill. June 25, 2024) ..................... 8

*Sestric v. Clark*, 765 F.2d 655 (7th Cir. 1985) ........................................................ 18

*Smart v. Main Line Health*, No. 22-CV-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) .................................................................................................... 15, 17

*Sobitan v. Glud*, 589 F.3d 379 (7th Cir. 2009) ......................................................... 6

*Solomon v. Flipps Media, Inc.*, No. 22-CV-5508, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) .............................................................................................. 15-17

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ................................... 18

*T.D. v. Piedmont Healthcare, Inc.*, No. 23-CV-5416, 2024 WL 3972984 (N.D.
Ga. Aug. 28, 2024)........................................................................................ 14

*United States v. Gross*, 451 F.2d 1355 (7th Cir. 1971)...................................... 7-8, 12

*Wilson v. Thriller, Inc.*, 598 F.Supp.3d 82 (S.D.N.Y. 2022) ............................... 16-17

*Yershov . Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) .................. 18, 20

**State Cases**

*All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183
Cal. App. 4th 1186 (2010) ................................................................... 9

*Matter of Becker*, 620 N.E.2d 691 (Ind. 1993)........................................................ 21

*City of Coos Bay v. Aerie No. 538 of Fraternal Ord. Eagles*, 170 P.2d 389 (Or.
1946)........................................................................................................ 9

*Matter of Hughes*, 640 N.E. 2d 1065 (Ind. 1994) ................................................... 21

*Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904 (Ill. 1942) ...................................... 9-10, 12-13

**Federal Statutes**

18 U.S.C. § 921 ................................................................................................. 7-8

18 U.S.C. § 2710 ......................................................................................... *Passim*

28 U.S.C. § 501(c)(3)................................................................................... *Passim*

**Federal Rules**

Fed. R. Evid. 201 .............................................................................................. 3

Fed. R. Civ. P. 12(b)(6)..................................................................................... 6

**State Rules**

Ind. St. Admins. & Disc. R. 29 ...................................................................... 19-20

**Law Review**

*Chapter Three The Video Privacy Protection Act As A Model Intellectual Privacy
Statute*, 131 Harv. L. Rev. 1766 (2018) ........................................................... 20

**Government Websites**

Internal Revenue Services, NBI, Inc. Tax Year 2022 Form 990 (last accessed
Nov. 19, 2024)
https://apps.irs.gov/pub/epostcard/cor/391768861_202212_990_202
4010422172449.pdf ........................................................................................ 3

Ind. Judicial Branch, CLE Course Sponsor (last accessed Nov. 19, 2024),
https://courtapps.in.gov/Reports/api/SponsorReport ................................... 3

Ind. Sup. Ct., Sponsor Application of Accreditation of CLE Course (last
accessed Nov. 19 2024),
https://www.in.gov/courts/ace/files/sponsor-cle-application.pdf ...................... 21

U.S. Dist. Ct. S.D. Ind., Kendra Yvette Harper (last accessed Nov. 19,
2024), https://ecf.insd.uscourts.gov/cgi-bin/BarLookup.pl ........................................ 2

Defendant NBI, Inc. ("NBI" or "Defendant"), by and through its attorneys, Duane Morris LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Kendra Harper's ("Harper" or "Plaintiff") Amended Complaint for Failure to State a Claim.

## INTRODUCTION

After taking her opportunity to amend her Complaint, Plaintiff failed to save her Video Privacy Protection Act ("VPPA") claim. Plaintiff continues to fail to plead facts supporting necessary elements of her claim, and her Amended Complaint remains deficient on its face. The Court should dismiss the Amended Complaint with prejudice because Harper has not and cannot cure her deficient claims.

*First*, the Court should dismiss Harper's claim for violation of the VPPA because she has not and cannot allege that NBI is a "video tape service provider" within the meaning of the statute. By the statute's plain language, it proscribes only the conduct of entities engaged in "business." Harper cannot dispute that NBI is a nonprofit and, therefore, does not engage in "business" within the meaning of the VPPA. Accordingly, Harper's claim cannot succeed.

*Second*, the Court should dismiss Harper's Amended Complaint because she fails to plausibly allege that NBI "disclosed" her specific personal information. As Harper concedes, she bases her claim on nothing but screenshots purporting to exemplify a hypothetical user's trip to NBI's website. Courts addressing similar claims have required more of plaintiffs at the pleading stage. Because Harper relies on mere hypotheticals, and

fails to plead facts supporting her claims, the Court should dismiss the Amended Complaint.

*Third*, the Court should dismiss Harper's claim because continuing legal education courses are not the "prerecorded video cassette tapes or similar audio visual materials" that Congress intended to regulate when it passed the statute. Because Congress codified the term "similar" in the types of materials that the VPPA covers, and continuing legal education materials are not similar to the types of materials Congress intended to regulate, Plaintiff's claim fails as a matter of law.

As a result, and as further discussed herein, the Court should dismiss the Amended Complaint with prejudice because Harper has not and cannot plead the elements of the claim she asserts.

## BACKGROUND

This case involves Harper's claim that Defendant allegedly disclosed the title of a continuing legal education ("CLE") course she viewed along with allegedly personally identifiable information. Harper lives in "Marion County, Indiana" (ECF No. 11 ¶ 7) and is an attorney. *See, e.g.,* U.S. Dist. Ct. S.D. Ind., Kendra Yvette Harper (last accessed Nov. 19, 2024), https://ecf.insd.uscourts.gov/cgi-bin/BarLookup.pl (a search for "Kendra Harper" evidences her admission to the U.S. District Court for the Southern District of

2

Indiana).[1]  Harper brings suit against NBI, a 501(c)(3) nonprofit[2] and certified CLE course provider sponsored by the State of Indiana.  *See, e.g.*, Ind. Judicial Branch, Continuing Legal Education Course Sponsor (last accessed Nov. 19, 2024), https://courtapps.in.gov/Reports/api/SponsorReport.  Harper alleges that, in June 2024, she purchased videos from "nbi-sems.com" (*i.e.*, Defendant's website).  (ECF No. 11 ¶ 9.)  She alleges that "[o]ne of the items she purchased from Defendant's website was a prerecorded video entitled 'Negotiating Injury Claims: Secrets and Insider Tips.'"  (*Id.*)  She alleges that, to make this purchase, she created an account on NBI's website and provided her name, email address, payment information, and zip code.  (*Id.*)

Plaintiff's claim allegedly stems from NBI's purported use of Meta, Inc.'s business tool called Meta Pixel.  Harper alleges that NBI installed Meta Pixel, allegedly a "unique string of code that companies can embed on their websites to allow them to track consumers' actions and report the actions back to Meta," on its website.  (*Id.* ¶ 44.)  She claims that this software allows Meta to "use the collected information to service highly targeted advertising to them."  (*Id.* ¶ 45.)  Harper alleges that Meta Pixel transmits the

---

[1]  This Court may take judicial notice of the information contained on the Southern District of Indiana's website because it is a government website.  *See* Fed. R. Evid. 201; *see also Pickett v. Sheridan Health Care Ctr.*, 664 F. 3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

[2]  NBI's filings with the IRS substantiate that it is a 501(c)(3) entity that "provide[s] educational assistance and services to improve education."  *See* Internal Revenue Services, NBI, Inc. Tax Year 2022 Form 990 (last accessed Nov. 19, 2024) https://apps.irs.gov/pub/epostcard/cor/391768861_202212_990_2024010422172449.pdf.

"FIDs [*i.e.*, Facebook ID] of its customers, the specific titles of video products that each of them requested or obtained, and the purchase of a subscription."  (*Id.* ¶ 62.)  She further alleges that she "has never consented, agreed, authorized, or otherwise permitted Defendant to disclose her Personal Viewing Information to Meta."  (*Id.* ¶ 12.)

Notably, Harper does not plead any factual allegation to show that Meta Pixel was actually installed on the webpages she allegedly accessed; rather, she provides screenshots purporting to demonstrate what information might have been transmitted when an entirely different video was hypothetically purchased.  (*Id.* ¶¶ 59-60.)  Indeed, Harper's only supposedly "factual" allegations relate to the hypothetical transmission of an imaginary user's FID when that imaginary user hypothetically purchased "Hardball Negotiation Tactics:  How to Use and Defuse Them."  (*Id.* ¶ 59.)  Harper does not allege that she watched, purchased, requested, or obtained that video.  (*See generally id.*) Similarly, Harper does not allege that similar technology was installed on the webpage for "Negotiating Injury Claims: Secrets and Insider Tips" (*i.e.*, the content she actually purchased) at the time she allegedly purchased it.  (*Id.* ¶ 9.)

Based on these allegations, on September 11, 2024, Harper filed this putative class action lawsuit alleging that NBI "knowingly disclos[ed] Plaintiff's and its other customers' identities, their subscription purchases, and the titles of the prerecorded video materials that they obtained to Meta Platforms, Inc."  (*Id.* ¶ 1.)   She alleges that this conduct violates the VPPA, 18 U.S.C. § 2710.  (ECF No. 11 ¶¶ 75–85.)  NBI moved to dismiss her Complaint because Harper failed to state a claim upon which relief can be granted.  (ECF Nos. 8-9.)  On November 5, 2024, Harper amended her Complaint but did

not cure the core defects at issue.  (*See generally* ECF No. 11.)  Consequently, NBI now moves to dismiss the Amended Complaint with prejudice.

## LEGAL STANDARD

A plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 540 (2007)).  "But allegations in the form of legal conclusions are insufficient.  As are threadbare recitals of a cause of action, supported by mere conclusory statements."  *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015 (quotations omitted).  In order to determine whether dismissal is proper, a district court may rely on "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."  *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## ARGUMENT

Plaintiff has not pled facts sufficient to state a plausible claim for alleged violation of the VPPA.  To state a claim under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)."  *See, e.g., Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quotations omitted).  The failure to plead even one of these elements should result in the dismissal of a VPPA claim

pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Plaintiff here has not pled facts sufficient to support any of them.

## I.   THIS COURT SHOULD DISMISS HARPER'S CLAIM BECAUSE SHE FAILS TO PLAUSIBLY ALLEGE THAT NBI IS IN THE BUSINESS OF PRERECORDED VIDEO TAPE RENTALS, SALES, OR DELIVERIES

Harper did not pled, and cannot plead, that NBI is a "video tape service provider" within the meaning of the VPPA. 18 U.S.C. § 2710(a)(4). Because nonprofits (such as NBI) are not engaged in *business*, they do not meet the statutory definition. Therefore, Harper cannot plead the first element of her VPPA claim.

The term "video tape service provider" refers to any person "engaged in the *business* . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* (emphasis added). The text of the statute does not define the phrase "engaged in the business" or even the term "business." *See generally id.* Because the term is "undefined," this Court is instructed to rely on the "traditional cannons of statutory interpretation and look to the plain meaning of the word" in order to ascertain its meaning. *Sobitan v. Glud*, 589 F.3d 379, 387 (7th Cir. 2009) (quotations omitted).

No federal court has analyzed whether a nonprofit, like NBI, can be "engaged in the business" of selling prerecorded video materials as used in the VPPA. The Seventh Circuit and other courts, however, have analyzed the plain meaning of this phrase as used in other statutes and determined that a purpose of livelihood or profit is required. Because Congress used the same terminology here, this Court should find that the same purposes are required for the VPPA.

A.    *The Seventh Circuit Requires Arms Dealers To Sell Firearms For Livelihood Or Profit*

The Seventh Circuit has looked at the term "business" as used in a similar statutory structure and determined that the purpose of the enterprise must be that of livelihood or profit.  *See, e.g., United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971).

In *Gross*, the court considered a federal statute that defines an arms "dealer" to be "any person *engaged in the business* of selling firearms or ammunition at wholesale or retail."  *Id.* (quoting 18 U.S.C. § 921(a)(11) (emphasis added)).  There, the criminal defendant sold guns for "a licensed firearms dealer" where "defendant and other salesman sold new and used pistols, shotguns and rifles to the store's customers."  *Id.* at 1356.  But, "[t]he defendant had no personal license to deal in firearms."  *Id.*  Acting in his personal capacity, the criminal defendant sold firearms to an undercover police officer and "the prices that the defendant charged the officer were considerably in excess of the market value of those guns."  *Id.* at 1356-57.  Based on this evidence, the government was able to secure a conviction of the above-mentioned statute at trial.

On appeal, the criminal defendant argued that he was not a "dealer" within the meaning of the statute because he sold the guns in his personal capacity — not for his employer.  The Seventh Circuit disagreed because it concluded that defendant had a profit motive.  It determined that the term "business" as it is used in the statute refers to "that which occupies, time, attention and labor for the purpose of livelihood or profit." *Id.*  The court concluded that the sale of such weapons all within a "reasonably short space of time" where the defendant had increased the price from the "market value of [the]

guns" (*i.e.*, to earn a profit) was sufficient to demonstrate that he was a "dealer" within the meaning of the statute. *Id.* at 1357-58.[3]

Put another way, the Seventh Circuit determined that, to be a dealer, the defendant must engage in business, which includes having a "purpose of livelihood or profit" from the sale of firearms.

**B.**    ***Securities Dealers Are Only Such If They Seek To Generate Profit And The Conduct Is That Of A Commercial Enterprise***

Federal courts have adopted this profit-motive interpretation in other contexts. *See SEC v. Carebourn Cap., L.P.*, No. 21-CV-2114, 2023 WL 6296032, at *9 (D. Minn. Sept. 27, 2023) (interpreting the phrase "engaged in the business of buying and selling securities"); *SEC v. Long*, No. 23-CV-14260, 2024 WL 3161669, at *2 (N.D. Ill. June 25, 2024) (same).  For example, in *Carebourn*, the court analyzed whether an entity was a securities "dealer" within the meaning of a federal statute that defined such persons as those "engaged in the business of buying and selling securities." *Id.* (quotations omitted).  The court determined that the "centerpiece to the dealer definition is the word 'business,' which is a commercial enterprise carried on *for profit*, a particular occupation or employment habitually engaged in for *livelihood or gain*." *Id.* (emphasis in original).  Consequently, the court determined the proper analysis was to "consider the amount of profit generated and the extent to which the conduct involved resembles a commercial enterprise." *Id.*  In

---

[3] Following the *Gross* decision, Congress ratified the Seventh Circuit's interpretation and codified the statute's applicability and required a "business to predominantly earn a profit through the repetitive purchase and resale of firearms." *See* 18 U.S.C. § 921(a)(21)(d).

sum, when Congress passes laws regulating only those engaged in "business," the analysis of their applicability turns on whether the entity in question seeks to generate profits and to conduct itself as a commercial enterprise.

### C.    *Social Clubs And Other Nonprofits Are Not Engaged In Business*

Consistent with the Seventh Circuit's and other federal courts' interpretations, state courts have found that the phrase "engaged in the business" excludes nonprofits. *Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904, 906 (Ill. 1942); *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1212-13 (2010) (concluding "a nonprofit trade association" was not "engaged in the business of selling or leasing goods" although it was "undisputed that [its] members are in the business of selling goods"); *City of Coos Bay v. Aerie No. 538 of Fraternal Ord. Eagles*, 170 P.2d 389, 399 (Or. 1946) (holding that the term "business" did not "include the right to levy the tax on an enterprise such as the defendant lodge, which is not being conducted for a livelihood or profit.")

For example, in *Svithiod Sing Club v. McKibbin,* the Illinois Supreme Court sought to answer "whether a social club, organized as a nonprofit corporation, which serves food and drink to its members but not to the public is subject to the Illinois retailers' occupation tax." 44 N.E.2d 904, 906 (Ill. 1942).  Similar to the VPPA, the retailers' occupation tax applies only to "persons engaged in the business" of selling certain personal property at retail.  *Id.* at 907.  The State's director argued that by selling "food and drinks to its members," the social club was engaged in the "business" of such sales.  *Id.* at 906-07.  The case, therefore, hinged on how to interpret "the word 'business,' used in the act."  *Id.*

The Illinois Supreme Court held "the word 'business,' as used in the act, is to be construed in the usual or popular meaning of the word, unless, as stated, the text or purpose of the act varies that meaning." *Id.* And under that plain meaning, the court held that nonprofit organizations do not qualify. *Id.* at 910. The court reasoned that it is clear that:

> the operation of certain equipment, such as a gymnasium or golf course, for the use of which a charge is made to the members, and to whom its use is restricted, does not change the primary object or purpose of the club from a nonprofit corporation whose object is the promotion of social intercourse and the advancement of social arts and sciences, to a business corporation engaged in commercial transactions.

*Id.* For that reason, the court concluded that it cannot "logically be said that the sale of food and drink to those members of a club who desire it . . . is a transformation or change of the objects of a club, not for profit, to the business of selling tangible personal property at retail." *Id.* Because the social club's "charters do not permit them to enter into and transact business for profit," it was not a "business" within the meaning of the statute.

As *Svithiod Sing Club* shows, courts look to the purpose of an entity (there a nonprofit) and ask whether the object of the organization is to generate profit. If an entity is organized for the advancement of the arts and sciences, it is not organized for "business" within the meaning of the statute.

**D.**    ***Courts Require An Alleged Video Tape Service Provider's Purpose To Be Significantly Tailored To The Monetization Of Prerecorded Videos***

The profit-motive interpretation is consistent with the leading district court opinion in *Cantu v. Tapestry, Inc.* which analyzed this language within the context of the VPPA. No. 22-CV-1974, 2023 WL 4440662, at *7 (S.D. Cal. July 10, 2023).

In *Cantu*, a plaintiff brought a similar class action lawsuit based on Coach.com's use of Meta Pixel on its website. *Id.* at *1. There, although Coach.com was a for-profit corporation, the plaintiff claimed that the website "allegedly hosted the 'Dream it Real' video" which was "a webpage promoting the charity works of the Coach Foundation" with Meta Pixel installed on the relevant webpage. *Id.* at *6 (quotations omitted). Coach.com explained that a "business as a luxury fashion retailer cannot fall within the meaning of a 'video tape service provider' as contemplated by the VPPA." *Id.* at *7. In response, the plaintiff argued that Coach.com's "business model involves monetizing instances in which consumers watch videos." *Id.* But, the *Cantu* court dismissed the plaintiff's VPPA claims holding that this allegation was "insufficient."

The *Cantu* court held that [t]he language 'engaged in the business' connotes 'a particular field of endeavor, *i.e.*, a focus of the defendant's work." *Id.* (quotations omitted). And, Coach.com was not "engaged in the business" of selling prerecorded materials. The court held that "[e]ven if it is true that Defendant's business model monetizes the occasions its customers watch videos, Plaintiff has not alleged facts supporting an inference that . . . Coach's enterprise is 'significantly tailored' to achieving such a purpose." *Id.* But even as a for-profit luxury fashion retailer, the hosting of a charity video was insufficient to transform the nature of Coach.com's operations to that of a "video tape service provider." *Id.* The *Cantu* court found that an entity's purpose must be 'significantly tailored' to the monetization of videos to "garner liability under the VPPA." *Id.*

Like the courts in *Gross*, *Carebourn*, and *Svithiod Sing Club,* the *Cantu* court looked to the purpose of the defendant's conduct and then asked whether selling prerecorded videos was "significantly tailored" to that purpose. Although there was no dispute that Coach.com's purpose (as a for-profit entity) was to make a profit, it stands to reason that an entity whose purpose was not to sell prerecorded videos and make money, but rather educate lawyers, would likewise not be covered by the VPPA.

### E.  *This Authority Demonstrates That Nonprofits Are Not Subject To The VPPA's Reach*

Taken together, this authority shows that the VPPA requires a profit-motive and that a defendant must operate as a commercial enterprise to be considered a "business" under the statute. Arms sellers violate the law only if they have a primary purpose to make a profit or livelihood. Securities dealers are regulated only if they seek to make a profit and operate as commercial enterprises. And, social clubs pay taxes reserved for businesses only if they have the mission of a business corporation engaged in commercial transactions. The common thread throughout these opinions is the *purpose* of an entity and whether the entity's purpose is consistent with that of a for-profit "business." Congress used that same phrase in the VPPA, showing that its intent is the same.

Here, Harper cannot establish that NBI had a profit motive or an intention to operate as a commercial enterprise consistent with the meaning of the term "business." Similar to the court in *Svithiod Sing Club*, which declined to apply a statute limited to "businesses" to "a nonprofit corporation whose object is the promotion of social intercourse and the advancement of social arts and sciences" because it sold food and

drink, this Court should not apply the VPPA to NBI here.  Like the defendant in *Svithiod Sing Club*, NBI's purpose as a 501(c)(3) is not significantly tailored to the monetization of prerecorded videos.  To the contrary, NBI's purpose is not to monetize videos, and make money, but rather to provide continuing legal education to practicing lawyers.  By definition, a 501(c)(3) entity like NBI is "organized and operated *exclusively* for . . . educational purposes."  28 U.S.C. § 501(c)(3) (emphasis added).  There is no room in this statutory definition for NBI's operations to be "significantly tailored" to the business of selling prerecorded videos, making a profit, or anything other than educating lawyers.  Simply put, by definition, a nonprofit cannot be "significantly tailored" to make a profit.

Moreover, even if Harper asserts that NBI made money or supported the livelihood of its employees from such work, that argument misses the point.  The point is that NBI was not organized to provide employees jobs, and it was not organized to make money.  Lawyers around the country are required to fulfill their CLE requirements in order to stay in compliance with the rules of their governing jurisdictions.  NBI is organized to step in, fill that gap, and exclusively provide services for "educational purposes."  28 U.S.C. § 501(c)(3).

Given this context, it is clear that Harper's claims are without merit because Congress did not intend for nonprofits like NBI to be subject to the VPPA's reach when it limited the statutory definition of "video tape service provider" to those engaged in "business."  Harper's Amended Complaint should be dismissed with prejudice.

## II.    HARPER'S HYPOTHETICAL EXAMPLES BASED ON AN IMAGINARY USER ARE INSUFFICIENT TO PLAUSIBLY ALLEGE A VIOLATION OF THE VPPA

Even if NBI were a for-profit entity and eligible to be considered a "video tape service provider," Harper still has not and cannot plausibly allege that NBI disclosed her personally identifiable information.  Instead, Harper relies exclusively on an example of what information allegedly would have been transmitted if a hypothetical visitor (other than her) purchased an entirely different video on NBI's website.  Accordingly, Harper also fails to plausibly plead the second element of her claim — *i.e.*, that "the defendant disclosed [her] personally identifiable information."  *Mollett*, 795 F.3d at 1066 (quotations omitted).

Although advertising technology (*i.e.*, "adtech") claims are a fairly new phenomenon, courts have expressed extreme skepticism over their viability.  *See, e.g., T.D. v. Piedmont Healthcare, Inc.*, No. 23-CV-5416, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024).  Indeed, courts have noted that "[c]ases like this have sprouted like weeds in recent years" and that there is nothing private about this information because "it is widely understood that, when browsing websites, your behavior may be tracked, studied, shared, and monetized."  *Id.*  Harper, like numerous other plaintiffs in such adtech cases, relies on screenshots of what technology allegedly was installed on a wholly different webpage on NBI's website at a wholly different time from when she allegedly visited it.  Such imaginary hypotheticals are not sufficient to state a plausible claim.  Harper does not include any facts or screenshots of the webpage she alleges she visited, let alone from the time she alleges she visited it.  (*Id.* ¶¶ 59-60.)

14

Courts in adtech cases agree "the law requires more than hypotheticals at the pleading stage." *Santoro v. Tower Health*, No. 22-CV-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024). Courts repeatedly have found such hypotheticals insufficient to state a claim. *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) (finding an "exemplar screenshot of Mark Zuckerberg's Facebook page, which includes his name, photographs of him, and other personal information" to be insufficient to state a claim); *Doe v. Davita Inc.*, No. 23-CV-01424, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) ("While Plaintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta."); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 23-CV-01159, 2024 WL 2133709, at *5 (W.D. Wash. May 13, 2024) ("Plaintiff provides no additional factual information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information."); *Smart v. Main Line Health*, No. 22-CV-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) ("[A]lthough the Amended Complaint provides an example of a search by a *hypothetical visitor* to the Main Line Health webpage . . . Plaintiff fails to state what specific [HIPAA]-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta.") (emphasis in original); *Doe v. Amgen*, No. 23-CV-07448, 2024 WL 575248, at *2 (C.D. Cal. Jan. 29, 2024) ("It is not enough for Plaintiff to plead conclusory allegations that Defendant violated her privacy without offering any facts that her information was collected and then improperly disclosed to third parties.").

Courts have applied the same reasoning to claims for supposed violations of the VPPA. *See, e.g., Wilson v. Thriller, Inc.*, 598 F.Supp.3d 82,92 (S.D.N.Y. 2022) (dismissing a VPPA claim because plaintiff "needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim."). For example, in *Solomon*, a VPPA plaintiff sued a defendant due to its use of Meta Pixel on its website and alleged "various boxing, combat, and music" videos were transmitted to Meta. 2023 WL 6390055, at *1. In an attempt to demonstrate what information was allegedly transmitted, the complaint contained an "exemplar screenshot of Mark Zuckerberg's Facebook page, which includes his name, photographs of him, and other personal information." *Id.* at *3. The court found this allegation insufficient. *Id.* It reasoned that a VPPA plaintiff must "allege that *her* public Facebook profile page contained identifying information about *her* in order to state a plausible claim" and, thus, found this generic allegation insufficient. *Id.* (emphasis added). Accordingly, it dismissed the complaint for failure to plead the second element of a VPPA claim. *Id.*

Here, Harper's failure to plead sufficient facts and her inclusion of mere hypotheticals is a two-fold misstep. (ECF No. 11 ¶¶ 59-60.) First, Harper's omissions are even more fatal to her claims than the plaintiff's in *Solomon*, because Harper does not even attempt to plead a hypothetical regarding what information was on her Facebook profile when the alleged disclosure occurred. (*See generally id*). She omits this information all together. (*See id.*) Indeed, she does not allege that her Facebook profile was "public" and she does not allege that her profile contained "identifying information" within the meaning of the VPPA. *Wilson*, 598 F. Supp. at 92; *Solomon*, 2023 WL 6390055, at *3. Thus,

16

in the absence of such allegations, *Solomon* and *Wilson* are the most apt authority and support a finding of dismissal here.

Second, even if Harper had included sufficient information regarding her Facebook profile, the allegations that she does plead, related to NBI's website, are strictly those of a "hypothetical visitor." *Smart*, 2024 WL 2943760, at *3; *Nienaber*, 2024 WL 2133709, at *5; *Davita Inc.*, 2024 WL 1772854, at *2. The hypothetical in question purports to set forth the transmission process "when the user initiated checkout on Defendant's website for the video entitled 'Hardball Negotiation Tactics: How to Use and Defuse Them.'" (*Id.* ¶ 59.) This is not the video Harper alleges she obtained which gave rise to her VPPA claim. (*Id.* ¶ 9.) In order to state a VPPA claim, Harper needs to plausibly plead facts establishing this technology would have operated in the way that she claims it does for her purchase of "Negotiating Injury Claims: Secrets and Insider Tips" to be potentially violative of the statute. (*Id.*) She has not pled such facts and, accordingly, Harper's Amended Complaint for violation of the VPPA should be dismissed for failure to plausibly allege the second element of that claim.

## III. CLE COURSES ARE NOT OTHER "SIMILAR AUDIO VISUAL MATERIALS" AND, THEREFORE, NBI IS NOT A VIDEO TAPE SERVICE PROVIDER

Even assuming *arguendo* that nonprofits can be engaged in "business," and that Harper plausibly alleges her personal information was disclosed, her claim would still fail because CLE courses are not the "prerecorded video cassette tapes or similar audio visual materials" that Congress intended to regulate when it passed the statute. 18 U.S.C.

§ 2710(a)(4).  Consequently, Harper continues to fail to plead that NBI is a "video tape service provider" within the meaning of the VPPA.

The VPPA was "[e]nacted in 1988 in response to the *Washington City Paper's* publication of then-Supreme Court nominee Robert Bork's video rental history (a DC-area video store provided it to a reporter)." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir. 2014).  "The profile contained a list of 146 films that Judge Bork and his family had rented from a video store." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016).  Concerned with what it deemed an invasion of Judge Bork's privacy, Congress passed the VPPA to prevent similar disclosures.  *See id.*  But, it did so against the backdrop that "the states have been held to have a legitimate interest in regulating the quality of the legal practice," and nobody thought that 30 years later federal law would be playing a prominent role in when and how an attorney's CLE courses may be disclosed.  *See Sestric v. Clark*, 765 F.2d 655, 663 (7th Cir. 1985).  Consequently, to determine what constitutes "similar audio visual materials" within the meaning of the statute, courts look to the Senate Report "recommending passage of the VPPA, specifically identifying 'laser discs, open-reel movies, and CDI technologies'" to ascertain whether Congress intended to regulate such conduct.  *See, e.g., Louth v. NFL Enterprises, LLC*, No. 21-CV-00405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (quoting S. Rep. No. 100-59, at 5 (1988)).

Based on this background, we know that Congress did not intend for CLE courses to be captured within the meaning of the VPPA for three reasons.  First, we know Congress did not think it was regulating compliance protocols for CLE course providers

18

because CLE courses were largely in-person events in 1988.  *See, e.g.*, Historical Notes, Ind. St. Admis. & Disc. R. 29, Mandatory Continuing Legal Education.  For example, in Indiana, the concept of CLE "Distance Education" (*i.e.*, "instructional delivery that does not constrain the student to be physically present in the law location as the instructor") did not even exist until the 2006 amendment which inserted the relevant subsection.  *See id.* (noting "the 2006 amendment, eff. Jan. 1, 2007, inserted Subsec. (n) in Section 2.")  Until 2022, Indiana courts heavily controlled the amount of CLE courses that could be completed remotely.  *See id.* (explaining the 2022 amendment).  Until quite recently, there was no possibility that these courses would ever be sold in a prerecorded format.  Put simply, Congress did not think it was capturing CLE courses in its definition of prerecorded "audio visual materials," because state courts required such courses to be attended in person in 1988.

This policy objective is evident even from the selective quotations from U.S. Senators that Harper includes in her Amended Complaint.  (ECF No. 11 ¶¶ 20-23.)  Indeed, Harper concedes that Congress "sought to codify, as a matter of law, that our right to privacy protects the choice of movies that we watch with our family in our own homes."  (*Id.* ¶ 21 (quotations omitted).)  It is quite a stretch (and certainly not a reasonable inference) to imagine that the 1988 Congress envisioned that Indiana lawyers would one day be watching state-mandated CLE courses with their families for fun.  As explained above, at the time, such courses would have been held in person.  Nor would the 1988 Congress believe that on-demand CLE courses "offer[s] a window into [their] loves, likes, dislikes."  (*Id.* ¶ 20.)  These courses are professional education courses meant

19

to "establish minimum continuing legal education requirements for each Attorney admitted to the Bar of the State of Indiana." *See* Ind. St. Admin. & Disc. R. 29, Mandatory Continuing Legal Education.  CLE courses are not what Congress intended to regulate when it passed the VPPA.

Second, we know Congress did not intend to regulate CLE courses because they are not similar to Judge Robert Bork's personal rental video library.  The infamous *Bork Tapes* revealed that Judge Bork "favored Alfred Hitchcock films, spy thrillers, and British costume dramas; [and] someone in the Bork household had an affinity for John Hughes movies." *Chapter Three The Video Privacy Protection Act As A Model Intellectual Privacy Statute*, 131 Harv. L. Rev. 1766, 1766 (2018).  In other words, content that was (at best) only peripherally related to Judge Bork's qualifications to be a Justice on the U.S. Supreme Court.  *See id.*  However, the irony here is that what CLE materials Judge Bork frequently reviewed and the legal scholarship he engaged with would have certainly been relevant to his confirmation hearings.  *See id.*  We know this fact to be true because Judge Bork volunteered this information of his own accord and it gave rise to "one of the fiercest battles ever waged over a Supreme Court nominee." *Id.* (quotations omitted).  Like Judge Bork, Harper should not take exception with the disclosure of the legal scholarship she engages with.  Congress was irate with the disclosure of *personal* video viewership and not *professional* viewership.

Third, we know Congress did not intend to regulate CLE courses because no reasonable person views the content of an attorneys' CLE "repugnant to the right of privacy" today.  *Yershov*, 820 F.3d at 485.  To the contrary, Indiana courts require attorneys

to disclose this information themselves. *See, e.g., Matter of Hughes*, 640 N.E. 2d 1065, 1066 (Ind. 1994) ("Respondent attended an Indiana law update seminar sponsored by the Indiana Continuing Legal Education Forum"); *Matter of Becker*, 620 N.E.2d 691, 694 (Ind. 1993) ("Respondent is ordered to attend the next available seminar in appellate practice offered in Indiana by a certified continuing legal education provider, and upon completion of the same, Respondent shall show proof of attendance").  As it stands, the Indiana Supreme Court even affirmatively requires its CLE providers to disclose "all Indiana attorneys who attended within thirty days following the course."  Ind. Sup. Ct., Sponsor Application of Accreditation of CLE Course (last accessed Nov. 22, 2024), https://www.in.gov/courts/ace/files/sponsor-cle-application.pdf.  If this information were so highly sensitive that Congress thought it necessary to adopt $2,500 in statutory damages per violation, then at minimum we would expect the courts in states with such requirements to maintain such privacy on their dockets and in their CLE course provider requirements.  But, they do not.

In short, CLE courses were far from Congress' mind when it passed the VPPA — and the extension of the statute to this novel context should be disregarded.

## CONCLUSION

For the forgoing reasons, Defendant NBI, Inc. respectfully submits that this Court should dismiss Plaintiff Kendra Harper's Amended Complaint with prejudice because it fails to state a claim upon which relief can be granted and also requests any other relief the Court deems proper.

Dated:  November 19, 2024

Respectfully submitted,

NBI, INC.

By:  /s/  *Gerald L. Maatman, Jr.,*
One of its Attorneys

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Tel:  (312) 499-6700
Fax:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., do hereby certify that a true and correct copy of the forgoing document has been furnished by the Court's CM/ECF filing system on this 19th day of November 2024 to the following individuals:

Frank Hedin
Julie Holt
HEDIN LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
Email:  fhedin@hedinllp.com
Email:  jholt@hedinllp.com


**Dated: November 19, 2024**                  /s/ *Gerald L. Maatman, Jr.*
                                                           Gerald L. Maatman, Jr.
                                                           DUANE MORRIS LLP
                                                           190 S. LaSalle Street, Suite 3700
                                                           Chicago, Illinois 60603
                                                           Telephone:  (312) 499-6700
                                                           Email:  gmaatman@duanemorris.com

                                                           *Counsel for Defendant*