**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **KENDRA HARPER**, *individually and on behalf of all others similarly situated,* | **ORAL ARGUMENT REQUESTED** |
| *Plaintiff,* | Judge William Conley |
| v. | |
| **NBI, INC.** | Magistrate Judge Anita Boor |
| *Defendant.* | Case No. 24-CV-00644 |

**DEFENDANT NBI, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street
Suite 3700
Chicago, Illinois 60603-3433
Tel:  (312) 499-6700
Fax:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 2

I.     NBI IS NOT A VIDEO TAPE SERVICE PROVIDER BECAUSE IT IS A NOT-FOR-PROFIT ENTITY .................................................................. 2

    A.    The Commerce Clause Is Irrelevant To This Case Of Simple Statutory Interpretation ..................................................................... 2

    B.    Not-For-Profits Are Not Businesses Within The Meaning Of The VPPA ........................................................................................... 4

        i.    Krassick Is Not Dispositive Of This Issue ............................. 7

        ii.    The Analogous Case Law Cited By NBI Is Persuasive Here ........... 7

II.    HARPER'S SPECULATION AND HYPOTHETICALS ARE STILL INSUFFICIENT ............................................................................. 10

III..   CLE COURSES ARE NOT SIMILAR AUDIO-VISUAL MATERIALS .................. 13

    A.    The Court Can Consider The Nature Of The Content That NBI Offers ........................................................................................ 14

    B.    CLE Courses Are Not "Similar" To The Materials Congress Sought To Regulate ................................................................................ 15

CONCLUSION ................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Camps Newhound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) .............. 2-3

*Cantu v. Tapestry, Inc.*, No. 22-CV-1974, 2023 WL 4440662 (S.D. Cal. 2023).................. 4, 10

*Connelly v. Dan Lepke Trucking LLC*, No. 15-CV-308, 2019 WL 5218850 (W.D. Wis. Oct. 16, 2019) .......................................................................................... 15

*Geinosky v. City of Chi.*, 675 F.3d 743 (7th Cir. 2012) ................................................ 14

*Ghannot v. Numerade Labs, Inc.*, 689 F. Supp.3d 714 (N.D. Cal. 2023)........................... 15-16

*Krassick v. Archaeological Institute of Am.*, No. 21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) .......................................................................... 4-8

*Louth v. NFL Enterprises LLC*, No. 21-CV-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ...................................................................................................... 16

*New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018)........................................................................................ 2

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011) ......................... 14

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .......................................... 3

*SEC v. Carebourn Cap., L.P.*, 21-CV- 2114, 2023 WL 6296032 (D. Minn. Sept. 27, 2023) .................................................................................................. 8-9

*Sestric v. Clark*, 765 F.2d 655 (7th Cir. 1985) .................................................. 17

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ............. 13. 15-16

*Solomon v. Flipps Media, Inc.*, 22-CV-5508, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ................................................................................................ 10-12

*United States v. Gross*, 451 F.2d 1355 (7th Cir. 1971)........................................5, 7, 9

*Wilson v. Thriller, Inc.*, 598 F. Supp.3d 82 (S.D.N.Y. 2022) ............................... 11-12

**State Cases**

*MIC Gen. Ins. Corp. v. Mich. Mun. Risk Mgmt. Auth.*, No. 341072, 2019 WL 1270646 (Mich. Ct. App. Mar. 19, 2019) ........................................................... 8

*Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904 (Ill. 1942) .......................................................... 9

**Federal Statutes**

15 U.S.C. § 78c(a)(5)(B) ...................................................................................................6

18 U.S.C. § 2710 ........................................................................................... *Passim*

26 U.S.C. § 501(c)(3) ........................................................................................... *Passim*

**State Statutes**

Mich. Comp. Laws Ann. § 445.1712 ......................................................................... 9

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 ......................................................................................... 3

Defendant NBI, Inc. ("NBI" or "Defendant"), by and through its attorneys, Duane Morris LLP, respectfully submits this Reply in Support of its Motion to Dismiss Plaintiff Kendra Harper's ("Harper" or "Plaintiff") Amended Complaint.

## INTRODUCTION

Harper's scattershot Response cannot save her Amended Complaint. Rather than respond to NBI's arguments directly, Harper dodges the real issues, misconstrues NBI's arguments, and advances positions not supported by applicable authority. Consequently, the Amended Complaint should be dismissed for the following three reasons, each of which is discussed more fully below.

*First*, the Court should dismiss the Amended Complaint because the Commerce Clause is irrelevant to whether the statutory text of the Video Privacy Protection Act (the "VPPA") applies to Defendant. Just because Congress has the constitutional power to regulate not-for-profit entities, does not mean that it actually did so. In enacting the VPPA, Congress limited the VPPA's reach to those entities engaged in "business," and it chose not to extend the reach of the VPPA to nonprofit entities. Therefore, NBI is not a "video tape service provider" within the meaning of the statute.

*Second*, this Court should dismiss the Amended Complaint because, as Harper admits, in order to state a claim, she needs to plead the identifying information that she alleges was contained on her Facebook profile. Harper did not do so. Instead, she relies on mere hypotheticals and attempts to rely on unpled conclusory statements of a uniform practice. Hypotheticals and unpled allegations are not enough. Harper's claim should be dismissed.

1

*Third*, the Court should dismiss the Amended Complaint because the continuing legal education ("CLE") courses that Defendant offers are not the "similar audio visual materials" that Congress regulated when it passed the VPPA. Accordingly, this Court should find that the allegations in the Amended Complaint are outside the statute's reach, and the claim should be dismissed with prejudice.

## **ARGUMENT**

## I.   **NBI IS NOT A VIDEO TAPE SERVICE PROVIDER BECAUSE IT IS A NOT-FOR-PROFIT ENTITY**

In Harper's Response to NBI's arguments regarding its not-for-profit status, she advances two arguments, both of which are wrong. She claims the Commerce Clause of the U.S. Constitution sweeps NBI into the statute's reach (it does not), and she claims a not-for-profit entity can be a "business" as defined by the statute (they cannot). Accordingly, this Court should dismiss the Amended Complaint with prejudice.

### A.   *The Commerce Clause Is Irrelevant To This Case Of Simple Statutory Interpretation*

Harper's heavy reliance on *Camps Newhound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997), is misplaced. The question of whether Congress can regulate not-for-profit entities is an entirely different question than whether it chose to do so.

Harper seems to misunderstand how Congress's enumerated powers interact with its legislative choices. "The Constitution confers on Congress not plenary legislative power but only certain enumerated powers." *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). The Commerce Clause is one of the enumerated powers and provides that Congress has the power to regulate commerce

"among the several States." *See* U.S. Const. art. I, § 8, cl. 3. It is simply one potential prerequisite with which laws must comply for Congress to act in a constitutional manner. *See id.* However, the question of whether a law is *constitutional* is separate from the question of whether Congress chose to address a particular area. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("In this case, indeed, the impediment to subject-matter jurisdiction on which Marathon relies — lack of complete diversity — rests on statutory interpretation, not constitutional command."). To that end, Harper repeatedly cites *Camps Newhound* for the proposition that "the nonprofit character of an enterprise does not place it beyond the purview of federal laws regulating commerce." 520 U.S. at 584. More specifically, the Supreme Court held that there is no reason why the nonprofit charter of an enterprise removes it from either "the affirmative or negative aspect of the Commerce Clause." *Id.* at 585.

While Congress may be allowed to regulate the conduct of not-for-profit entities to the extent they engage in interstate commerce (like any other individual or entity), that ability is entirely separate from the question of whether Congress chose to do so. Here, Harper asks the Court to find that NBI is a "video tape service provider" because she alleges that "Defendant sells online prerecorded videos and those sales affect interstate commerce." (ECF No. 25 at 12.) Harper misunderstands the issue. Harper advances the test for *constitutionality* of the statute in question and ignores the question of whether the plain language of the VPPA covers NBI in the first instance.

NBI never argued that its content solely affects intrastate interests such that it is outside the scope of the Commerce Clause. (*See generally* ECF No. 14.) Rather, NBI does

3

not fall within the scope of the VPPA because the VPPA specifically uses the term "business" to describe those who are covered by its reach. 18 U.S.C. § 2710(a)(4). The question is not whether Congress could regulate NBI's conduct via the Commerce Clause but rather whether Congress chose to extend the VPPA to NBI. This is why federal courts analyze the VPPA's "business" limitation through the lens of statutory interpretation and not Commerce Clause jurisprudence. *See, e.g., Cantu v. Tapestry, Inc.*, No. 22-CV-1974, 2023 WL 4440662 (S.D. Cal. 2023). Thus, even if the Court finds that NBI's alleged conduct affects interstate commerce, it still needs to conduct a statutory analysis of the VPPA.

### B.   *Not-For-Profits Are Not Businesses Within The Meaning Of The VPPA*

Because the Commerce Clause is not dispositive here, the Court can turn to the plain language of the statute and determine what it means to be engaged in "business" as the statute requires. 18 U.S.C. § 2710(a)(4). On this front, Harper's Response falls flat, and her counterarguments should be rejected.

### i.   *Krassick* **Is Not Dispositive Of This Issue**

As an initial matter, it is worth noting that Harper relies heavily on *Krassick v. Archaeological Institute of America*, No. 21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022), for the proposition that the Michigan Preservation of Personal Privacy Act does not require a profit motive. (ECF No. 25 at 9-10.)[1] But Harper's position is a significant oversimplification of *Krassick*.

---

[1]   Relatedly, Harper suggests that the *Krassick* court blessed her newfound theory of the Commerce Clause. (ECF No. 25 at 12 ("[T]his Court should follow the court in *Krassick* and find that Plaintiff has plausibly alleged that Defendant is a video tape service provider, as Plaintiff has alleged Defendant sells online prerecorded videos and those

*Krassick* is distinguishable because the district court was tasked with making an *Erie* guess as to what the Michigan Supreme Court would decide on the interpretation of a state law. *Krassick*, 2022 WL 2071730, at *7. There already was precedent from a Michigan Court of Appeals that suggested that the Michigan Supreme Court would decide differently. *Id.* (citing *MIC Gen. Ins. Corp. v. Mich. Mun. Risk Mgmt. Auth.*, No. 341072, 2019 WL 1270646, at *3 (Mich. Ct. App. Mar. 19, 2019)). However, when looking at the plain language of the statute and similar federal precedent, the *Krassick* court looked to many of the same sources that other courts look to in order to define "business."

The *Krassick* court looked to the almost identical definition of "business" used in *United States v. Gross*, 451 F.2d 1355 (7th Cir. 1971) (discussed more fully below), which requires a finding of either profit or livelihood. *Krassick*, 2022 WL 2071730, at *5-6. Further, the *Krassick* court found that, in the absence of an express definition by Congress, the most apt definition would be "the Sixth Circuit's interpretation of 'engaged in the business,' which ostensibly requires a purpose for 'livelihood *or* profit.'" *Id.* at *7 (quotations omitted). In light of this precedent, *Krassick* concluded that even though the defendant's purpose was not to reap a profit, "those sales are nevertheless helpful to sustain the livelihood" of the organization and, therefore, it could be a "business" within the meaning of the statute. *Id.* at *8.

---

sales affect interstate commerce.").) *Krassick* does not discuss the Commerce Clause or interstate commerce at any point. The *Krassick* court was interpreting a state statute, and the Commerce Clause was irrelevant because state legislatures do not need to pass laws pursuant to an enumerated power.

The final point is where NBI's interpretation differs from the *Krassick* court. The *Krassick* court made its determination without analyzing the text of 26 U.S.C. §501(c)(3), which sets forth the exclusive purposes of such not-for-profit entities. The text of §501(c)(3) changes the analysis. The plain language of the Internal Revenue Code requires that the not-for-profit entities covered by its reach must be "organized and operated *exclusively* for religious, charitable, scientific, testing for public safety, literary, or educational *purposes*." *Id.* (emphasis added). These are exclusive purposes and do not allow a not-for-profit entity to operate for any other reason.

If the *Krassick* court would have looked to the Internal Revenue Code, it would have concluded that §501(c)(3) organizations cannot have a purpose of "livelihood" sufficient to bring them within the scope of the term "business." The mere fact that some individuals may be paid income by the organization is merely an incident to an organization's broader educational purpose. It is no different than a church paying a religious minister a salary for his or her services, or a church selling relevant religious texts to keep the lights on. No one seriously would contend that, by paying that salary or collecting that money, the religious organization transformed the nature of its exclusively religious, not-for-profit entity to that of a "business" organized for the purpose of "livelihood." For the same reason, this Court should find that NBI's purpose does not change based on whether others obtain "livelihood" from its continued existence because that is not the organization's purpose.

Harper, similarly, does not address the plain language of the Internal Revenue Code. Instead, she asks the Court to invent a new purpose for not-for-profit entities

contrary to what the statute reads.  She would prefer that the Code state that such entities are "organized and operated exclusively for . . . educational purposes or to support their own livelihood," so that the VPPA can apply to her claim.  That is not what the Internal Revenue Code provides.  Like NBI's previous example, this situation is no different than if a school, or a church, allegedly engaged in such conduct.  No one would plausibly claim that such entities are engaged in "business" sufficient to make them a "video tape service provider" akin to Blockbuster.  Everyone would recognize that such §501(c)(3) entities are not engaged in "business" but instead are entities providing services with a wholly different purpose in mind.  NBI's case is no different.  Because the Internal Revenue Service already determined the purposes that NBI is "exclusively" organized for, there is no room for any other determination to be made.  *Id.*

Accordingly, because the plain language of the Internal Revenue Code controls here, the Court should dismiss the Amended Complaint with prejudice.

### ii.     The Analogous Case Law Cited By NBI Is Persuasive Here

Apart from the conclusion of the *Krassick* court, the Parties agree on more than it may seem.  Examples of where the Parties seem to agree are included below.  The only real question is for the Court to decide whether this case law compels dismissal or not.

*First*, with respect to *United States v. Gross*, Harper admits that the Seventh Circuit holds that the term "business" requires that an entity's "purpose must be for 'livelihood or profit.'"  (ECF No. 25 at 13 (quoting *Gross*, 451 F.2d at 1357-58 (emphasis removed)).)  Further, it is undisputed that NBI does not operate for profit.  (*Id.* at 7-16.)  Therefore, like the *Krassick* decision, the only real question here is whether a purpose of livelihood is

7

sufficient to state a claim.  Indeed, by Harper's own words, NBI's "purpose must be for" that of livelihood in order for it to be a business.  (*Id.* at 13.)  However, for the reasons stated above, Harper cannot allege sufficient facts to support the inference that NBI's purpose is that of "livelihood."  Entities organized under §501(c)(3) do not have a purpose of livelihood but, rather, an exclusive and different purpose.

*Second*, and similarly, Harper's attempts to dispense with *SEC v. Carebourn Cap.*, *L.P.*, No. 21-CV- 2114, 2023 WL 6296032 (D. Minn. Sept. 27, 2023), are equally unpersuasive.  Although Harper concedes that "[t]he amount of profit generated was . . . one of many factors that the court could look to in its determination," she suggests that the Court should ignore this factor and look only to the "volume" of services NBI provided.  (ECF No. 25 at 13-14.)  However, Harper's arguments regarding the "volume" of NBI's services are incorrect.

The *Carebourn* court defined "business" the same way as the Seventh Circuit — *i.e.*, "a commercial enterprise carried on *for profit*, a particular occupation or employment habitually engaged in for *livelihood or gain*."  *Id.* at *9 (quotations omitted and emphasis in original).  There, the court went on to consider volume because of a statute-specific exemption that related to a defendant's "regular business."  *Id.* at *1, *9 (quoting 15 U.S.C. §78c(a)(5)(B)).  To decide whether the defendant's business was "regular," the court needed to consider the volume of securities sold.  *See id.*  The VPPA does not impose a similar "regular" business requirement.  *See generally* 18 U.S.C. § 2710.  Even if it did, however, Harper does not include allegations sufficient to claim a "high volume" of educational services offered.  *Carebourn*, 2023 WL 6296032, at *9 (quotations omitted).

Harper does not include a counterexample as to what "regular" transactions she believes would be relevant here nor does she wrestle with the fact that the "volume" of educational services a defendant provides cannot easily be reduced to a number.[2] *Carebourn*, like *Gross*, supports dismissal.

*Third*, Harper attempts to brush off the reasoning of *Svithiod Sing Cub* and similar state case law because it supposedly deals with the "definition and application of specific technical state statutes."[3]  (ECF No. 25 at 14.)  Even still, Harper admits that the case stands for the proposition that the Illinois Supreme Court's task was to determine the "primary purpose" of an entity.  (*Id.*)  She admits that "[i]f the sales were the primary purpose, the tax applied; if they were not, the tax did not apply."  (*Id.*)  This test is exactly what NBI explained in its opening memorandum.  (ECF No. 14 at 17 ("The common thread throughout these opinions is the *purpose* of an entity and whether the entity's purpose is consistent with that of a for-profit "business.").)  To that end, Harper has not pled any facts related to NBI's purpose and certainly cannot plead that NBI is organized for-profit.  By Harper's own admissions, the Amended Complaint should be dismissed.

*Fourth*, and finally, Harper admits that *Cantu*, 2023 WL 4440662, at *10, stands for the proposition that the Court is required to look to the "focus of the defendant's work"

---

[2] For example, Harper could be referring to the number of:  (i) subjects taught; (ii) classes offered whether free or paid for; (iii) classes paid for; (iv) the number of students; etc. This undeveloped argument is not sufficiently supported to defeat this motion.

[3]  It is worth noting the irony of this position where Harper's lone counterexample is a single district court interpreting a state statute — *i.e.*, the Michigan Preservation of Personal Privacy Act.  (*Id.* at 9 (citing Mich. Comp. Laws Ann. § 445.1712).)

(*i.e.*, its purpose) to determine if it is a video tape service provider.[4]  (*Id.* at 15-16.)  Again, the Parties seem to agree this analysis all comes down to the purpose of an entity.  The undisputed focus of NBI's work is not to make a profit or livelihood; rather, it is to educate.  That exclusive purpose is set by statute and Harper cannot contend otherwise.

Because each of these cases reached the conclusion that NBI asks the Court to reach here, dismissal of the Amended Complaint is warranted.

## II.   HARPER'S SPECULATION AND HYPOTHETICALS ARE STILL INSUFFICIENT

With respect to NBI's argument that the Amended Complaint relies on mere speculation and unsupported hypotheticals, Harper fairs no better.  Here, she relies largely on unpled facts and unsupported contentions.  Regardless, each of her four arguments will not save her conclusory allegations and, therefore, dismissal is appropriate on these grounds as well.

*First*, Harper's attempt to distinguish *Solomon v. Flipps Media, Inc.*, 22-CV-5508, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023), is wholly unpersuasive.  (ECF No. 25 at 25.) She argues that the plaintiff in *Solomon* "did not allege anything about what her Facebook account, or any Facebook account, contained" whereas she supposedly has done so.  (*Id.*)[5]

---

[4]  This concession is telling in light of Harper's underdeveloped and passing suggestion that it is not proper to look to the nature of an alleged provider's business.  (ECF No. 25 at 12.)

[5]  Harper's string cite of cases each standing for the proposition that an FID can identify a specific Facebook page are irrelevant.  (ECF No. 25 at 21-22.)  NBI's argument is not that an FID cannot identify a specific profile.  The argument is that there still needs to be allegations regarding what "personally identifying information" is contained on the Facebook page for disclosure to occur.  18 U.S.C. § 2710(a)(3).

But, the only allegations in the Amended Complaint that she can point to are generic paragraphs that state that Facebook profiles sometimes identify a "customer by name" and may contain "other personally identifying information about the customer as well." (*Id.* (citing ECF No. 11 ¶ 3).)  Paragraphs 3 and 46 of the Amended Complaint do not say that the alleged Facebook profile in question contains the name "Kendra Harper."  (ECF No. 11 ¶ 3.)  They do not say what "other personally identifying information" may have been obtained.  (*Id.*)  For all NBI knows, Harper could use a pseudonym on Facebook, or she could use a relative's profile.  (*Id.*)  So, even accepting as true that a Facebook ID ("FID") can identify a specific Facebook page, the Court does not know what allegedly personally identifying information Facebook possesses as to Harper specifically.  (*Id.*)

*Second*, Harper's attempts to distinguish *Wilson v. Thriller, Inc.* fail for the same reason as her arguments regarding *Solomon*.[6]  Although Harper is correct that *Wilson* involved the Thriller application and not Facebook, the underlying legal principles are the same.  *Wilson v. Thriller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022).  *Wilson* stands for the proposition that:

> While the complaint alleges what sort of information could be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information was actually included on Wilson's profile nor how that information could be used by a third party to identify Wilson.

---

[6]  Harper suggests that she does not need to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim because "that quote is nowhere in *Wilson*."  (ECF No. 25 at 24.)  The quote in question appears in *Solomon* and reads *verbatim* as follows: "Accordingly, Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim."  2023 WL 6390055, at *3.

*Id.* Paragraphs 3 and 46 of the Amended Complaint (upon which Harper exclusively relies) contain nothing more than mere generic examples of types of information that are sometimes on an individual's Facebook page. (ECF No. 11 ¶¶ 3, 46.) Harper does not allege anything that is on *her specific* Facebook page. (*See generally id.*)

*Third*, Harper's attempt to brush off the dismissal of several "adtech" cases because they only require that "a plaintiff must specify the *type* of information it alleges the defendant transmitted, in order to determine whether the information transmitted is the type of information protected by the statute" also fails. (ECF No. 25 at 27.) That is NBI's entire point. Harper's conclusory allegations only include a generic allegation that an FID was disclosed. (*See, e.g.,* ECF No. 11 ¶¶ 59-60.) The courts in *Solomon* and *Wilson* already found that this conclusory allegation is not enough, because an FID alone may not be able to identify someone. The underlying concern in these cases is clearly that a former user of a website cannot merely surf the web, find a website she used in the past, observe what may or may not be its current practices, and infer that such practices must have occurred when she used the site. Yet, as discussed below, that is exactly what Harper is purporting to do here.

*Fourth*, Harper misrepresents NBI's argument with respect to her use of mere hypotheticals and screenshots unrelated to her actual purchase. Harper *does not* explain or allege, at any point in the Amended Complaint, why she believes that by purchasing "Negotiating Injury Claims: Secrets and Insider Tips" her specific personal information was transmitted. (ECF No. 11 ¶ 9.) Her only response is to point to her unpled allegation (without citation to the Amended Complaint) that her screenshots purporting to show

12

the installation of Meta Pixel on an entirely different video must be indicative of a "uniform, standardized practice." (ECF No. 25 at 27.) Neither NBI nor the Court knows the basis for that conclusory legal conclusion because it is not in the Amended Complaint. (*See generally* ECF No. 11.) More pertinently, in a putative class action, it is irrelevant what harm may have been "suffered by other, unidentified members of the class to which [she] belong[s] and which [she] purport[s] to represent." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n. 20 (1976) (quotations omitted). Harper must plead sufficient facts to show that *her information* was disclosed as opposed to relying on an unpled speculative guess that there is a "uniform, standard practice" in play. (ECF No. 25 at 27.) She did not do so, and the Amended Complaint should be dismissed.

Therefore, for each of these reasons, Harper's speculative and hypothetical-based pleading should be dismissed because she does not allege specific facts to establish her basis for believing that Meta Pixel was installed on the video she allegedly obtained.

## III.. CLE COURSES ARE NOT SIMILAR AUDIO-VISUAL MATERIALS

Harper offers two arguments against dismissal based on the nature of the CLE course provided. First, she claims that the Court cannot consider these arguments at the motion to dismiss stage. Second, she claims that even if the Court considers these arguments, the CLE courses are covered by the VPPA. Both arguments are wrong.

### A. *The Court Can Consider The Nature Of The Content That NBI Offers*

Harper's initial contention is that because "the Complaint does not allege the content of the video materials Defendant sells," the Court cannot dismiss the Amended Complaint on this basis. (ECF No. 25 at 18.) Harper's argument is wrong for two reasons.

13

The first reason is that it is black-letter law that the Court may consider matters "subject to proper judicial notice" at the motion to dismiss stage. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Harper does not argue that the content that NBI offers cannot be subject to proper judicial notice. (ECF No. 25 at 16-21.) Harper does not make this argument because every single citation to factual material outside of the Amended Complaint came from a government website which is subject to judicial notice. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take notice of government websites."). Instead, she ignores the concept of judicial notice altogether. (ECF No. 25 at 16-21.) Therefore, Harper's argument that these materials cannot be considered is without merit.

The second reason is that it is simply not true that "the Complaint does not allege the content" relevant to this motion to dismiss. (ECF No. 25 at 18.) Harper, and not NBI, included the allegation that she viewed the CLE video titled "Negotiating Injury Claims: Secrets and Insider Tips." (ECF No. 11 ¶ 9.) Harper is the named plaintiff in this putative class action, and at this stage, only the content she viewed is relevant. She cannot rely on alleged harm "suffered by other, unidentified members of the class to which [she] belong[s] and which [she] purport[s] to represent." *Simon*, 426 U.S. at 40 (quotations omitted). If Harper cannot state a claim based on her alleged purchase of "Negotiating Injury Claims: Secrets and Insider Tips" (*i.e.*, a CLE video), then she cannot state a claim at all. (ECF No. 11 ¶ 9.)

Accordingly, the Court can consider NBI's arguments regarding the content it offered on its website and Harper's arguments to the contrary are meritless.

14

**B.**   ***CLE Courses Are Not "Similar" To The Materials Congress Sought To Regulate***

If the Court reaches the question here, then Harper asks the Court to disregard NBI's arguments because she argues it lacks a "textual basis" to claim that the materials alleged in the Amended Complaint are not similar to the materials that Congress sought to regulate.  (ECF No. 25 at 18.)  Harper is wrong.  The "textual basis" for NBI's similarity argument is the word "similar" which appears in the statute.   18 U.S.C. § 2710(a)(4).  Congress codified that the statute only reached "similar audio video materials" as existed at the time the statute was passed.  *Id.*  However, even if the word "similar" did not appear in the statute, the Court can consider these arguments to the extent the statute is deemed ambiguous.  *See, e.g, Connelly v. Dan Lepke Trucking LLC*, No. 15-CV-308, 2019 WL 5218850, at *2 (W.D. Wis. Oct. 16, 2019) ("[A] court may consider legislative purpose only if a statute is ambiguous.")  Therefore, Harper's argument is without merit.

Harper also argues that the phrase "similar" does not allow the Court to consider the subject matter of a video.  (ECF No. 25 at 20.)  To that end, she cites to *Ghannot v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 719-20 (N.D. Cal. 2023), for the proposition that "short, education focused videos" are similar to prerecorded "feature films and television."  (ECF No. 25 at 20.)  *Ghannot* is not helpful to Harper.  The argument here is not that NBI's content is so short or so educational that it could not be a "similar" prerecorded material to those in the past.  The argument is that, at the time, CLE courses were offered via an entirely different in-person medium and would have been exclusively "live" events which are not covered by the statute.  *See, e.g., Louth v. NFL Enterprises LLC*,

No. 21-CV-00405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022).  No one in Congress would have foreseen this application of a statute (originally intended to regulate video stores like Blockbuster and other retailers) to CLE service providers that are traditionally regulated by the courts of individual states.

Indeed, Harper's only response to NBI's argument that Congress did not intend to regulate CLE courses is that such a determination cannot be made at the pleadings stage. (ECF No. 25. at 19.)  Harper does not dispute that the concept of "Distance Education" was not inserted into the Indiana Rules until 2006.  (ECF No. 14 at 23-24 (citing Historical Notes, Ind. St. Admis & Disc. R. 29, Mandatory Continuing Legal Education).)  Instead, she suggests that NBI needs to submit "significant evidence and possible expert testimony" as to "prove the same for all fifty states."  (ECF No. 25 at 19.)  But, that argument misses the mark.

As established above, the only facts that are relevant are those as to Harper, herself, and not unnamed members of the putative class.  *Simon*, 426 U.S. at 40.  Harper is an Indiana attorney.  (ECF No. 14 at 7-8.)  The courts of the State of Indiana regulate her conduct.  (*Id.*)  Expert testimony is not needed to establish when Indiana courts allowed such courses to be conducted remotely because the Historical Notes to the Indiana Rules evidence when the concept of "Distance Education" was added to the applicable Rule.  (ECF No. 14 at 23-24 (citing Historical Notes, Ind. St. Admis & Disc. R. 29, Mandatory Continuing Legal Education).)  It is not plausible to suggest that Congress thought that the VPPA was supposed to change how Indiana-certified CLE providers operated.  (*Id.*)  To the contrary, the backdrop is that "the states have been held to have a

legitimate interest in regulating the quality of the legal practice," and Harper's reading is the one that extends the reach of the federal government into a matter historically regulated by the states.  *Sestric v. Clark*, 765 F.2d 655, 663 (7th Cir. 1985).  Moreover, such materials are not "repugnant to the right of privacy" because they are routinely disclosed on publicly available dockets (including, Harper's Amended Complaint here).  (ECF No. 25 at 19-20.)  These arguments should be rejected.

## CONCLUSION

For the forgoing reasons, Defendant NBI, Inc. respectfully requests that the Court dismiss Plaintiff Kendra Harper's Amended Complaint as well as grant any other relief that the Court deems just and proper.

**Dated:  January 3, 2025**

Respectfully submitted,

NBI, INC.

By:  */s/ Gerald L. Maatman, Jr.,*
One of its Attorneys

Gerald L. Maatman, Jr.
Jennifer A. Riley
Ryan T. Garippo
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Tel:  (312) 499-6700
Fax: 312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

*Attorneys for Defendant*